UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL BROOKS,

               Plaintiff,

                   v.

STEVEN J. PIECUCH, Corrections Counselor, and
JAMES ESGROW, Commissioner's Hearing
Officer,

               Defendants.

_____

**DECISION AND ORDER**

6:13-CV-06338 EAW

## INTRODUCTION

*Pro se* Plaintiff Michael Brooks ("Plaintiff"), a prisoner housed at Sing Sing Correctional Facility, filed this action seeking relief under 42 U.S.C. § 1983. (Dkt. 1). Presently before the Court is Defendant Piecuch's and Defendant Esgrow's (collectively, "Defendants") motion for summary judgment. (Dkt. 30). For the following reasons, Defendants' motion is granted.

## FACTUAL BACKGROUND

### I.    Standard for Determining Undisputed Facts

Defendants served Plaintiff with the present motion for summary judgment, which included a "Local Rule 56 Notice to Pro Se Litigant" to alert Plaintiff to the procedural requirements of summary judgment and the repercussions of not responding to the motion. (Dkt. 30-2). The Court clearly and specifically reiterated the warning to Plaintiff of the consequences of not responding in its motion scheduling order. (Dkt. 31).

- 1 -

Pursuant to the Local Rules of Civil Procedure, Defendants appended a Rule 56 statement of undisputed facts to their motion for summary judgment. (Dkt. 30-1).

Despite the warnings afforded Plaintiff, he has failed to file an opposing statement contesting the facts presented by Defendants or otherwise respond to Defendants' motion. Thus, the Court may accept as undisputed Defendants' Rule 56 statement as long as the Court is satisfied that the statement's citations to the evidence in the record support the assertions made. *See Vt. Teddy Bear Co., Inc v. 1-800 Beargram Co.*, 373 F.3d 241, 244, 246 (2d Cir. 2004) ("[T]he failure to respond may allow the district court to accept the movant's factual assertions as true."); *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998) ("We accept as true the material facts contained in [the] defendants' [Rule 56 material facts] statement because [the] plaintiff failed to file a response."); *see also* L.R. Civ. P. 56(a)(2) ("Each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement."). Accordingly, the Court deems admitted those facts in Defendants' Rule 56 statement to the extent that they are supported by admissible evidence and are not controverted by the record.

## II.    Undisputed Facts

While Plaintiff was located at Clinton Correctional Facility, he was issued a misbehavior report on July 28, 2008, charging him with assault on staff, refusing a direct order, lock-in directions, and insolent language. (Dkt. 1 at ¶ 8; Dkt. 30-5 at 147). The report was written by Officer R. Harnden, who reported that Plaintiff "grabbed the feed-

up cart and began charging [him] with [the] cart," "slammed the feed-up cart into [him], striking [his] arms, then . . . [striking him] with what [he] believe[s] was [Plaintiff's] right fist to [Officer Harnden's] right forehead." (Dkt. 30-5 at 147; *see also* Dkt. 1 at ¶ 9). A struggle reportedly ensued during which other officers arrived and assisted in bringing Plaintiff into compliance with direct orders to stop resisting and struggling. (*See* Dkt. 30-5 at 147-48). The report indicates that Plaintiff was then escorted to a hospital exam room. (*See id.* at 148).

By way of background to the instant matter, Plaintiff alleges that a "tier 3 superintendent's hearing"[1] was held on August 8, 2008, at which he was found guilty and punished with 20 months in solitary confinement, loss of privileges for 20 months, and loss of 20 months' good time. (*See* Dkt. 1 at ¶¶ 10-11). Plaintiff and his attorney, Michael Cassidy, Esq., filed an administrative appeal in which the original disposition was affirmed, except that the recommended loss of good time was reduced from 20 months to 12 months. (*Id.* at ¶¶ 12-13). Plaintiff and his attorney filed a proceeding under Article 78 of the New York Civil Practice Law and Rules on May 27, 2008, pursuant to which it was adjudicated, on January 8, 2010, that Plaintiff should receive a new hearing. (*Id.* at ¶¶ 14-15). Plaintiff alleges numerous Fourteenth Amendment due process deprivations pursuant to 42 U.S.C. § 1983 relating to the ensuing rehearing. (*See generally* Dkt. 1). The claims remaining after this Court's previous decision on the

---

[1] "DOCCs conducts three types of inmate disciplinary hearings. . . . Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of 'good time' credits." *Dawes v. Racette,* No. 9:12-CV-0718 (NAM/DEP), 2014 WL 6674636, at *2 n.1 (N.D.N.Y. Oct. 22, 2014).

motion to dismiss (Dkt. 15) include allegations of deprivation due to insufficient inmate assistance by his assistant, Defendant Steven Piechuch ("Piecuch"),[2] denial by Defendant Hearing Officer Esgrow ("Esgrow") of Plaintiff's right to submit evidence at his rehearing, and the recommencement of the hearing outside of Plaintiff's presence.[3] (*Id.* at 33).

---

[2]    Specifically, Plaintiff alleges that Piecuch failed to assist him in the following ways:

(1)    Piecuch refused to interview Plaintiff's requested witnesses and report the results or retrieve written statements from witnesses;

(2)    Plaintiff was never given the answers to the questions he proposed for potential witnesses, which deprived Plaintiff of the opportunity to marshal the evidence in time for his hearing;

(3)    Piecuch never provided Plaintiff with witness refusal forms, or otherwise indicated how the witnesses' interview would represent a safety threat or would have been redundant;

(4)    The inmate Assistant Form did not indicate if anyone was interviewed, or if any witnesses agreed or refused to testify at Plaintiff's hearing;

(5)    Piecuch did not finish filling out the inmate Assistant Form; and,

(6)    The inmate Assistant Form indicated that a majority of the documents requested by Plaintiff were never produced, including the list of inmates in E7 block, list of porters, photographs, interviews of nurses and witnesses, and command logs.

(Dkt. 1 at ¶¶ 21-30, 79).

[3]    Specifically, Plaintiff alleges the following violations occurred during the hearing:

(1)    It was never determined which witnesses were interviewed and which refused to testify for Plaintiff;

(2)    Esgrow failed to introduce inmate refusal forms into the record;

(3)     Esgrow failed to demonstrate that producing the inmate refusal forms would have constituted a threat to institutional safety or would have been redundant;

(4)     Esgrow failed to make a part of the record the efforts made to secure the testimony of inmate witnesses that could not be located, "went home" or "[were] in MHU";

(5)     Esgrow refused to help Plaintiff because it was "not his job";

(6)     Esgrow refused to allow testimony to show that Plaintiff's rights were violated before the hearing began, and that his rights were violated during the hearing;

(7)     Esgrow refused to allow Plaintiff's witnesses to be asked whether they had been interviewed;

(8)     Esgrow used the testimony of the author of the misbehavior report to deny Plaintiff video documentary evidence and exonerating verbal testimony;

(9)     Esgrow failed to reinstate Plaintiff's inmate assistance upon Plaintiff's request;

(10)    Esgrow failed to inquire as to what happened to the videotape, such as "was it recycled or was it destroyed intentionally, or who did it";

(11)    When Plaintiff requested photographs of Officer Harden, Esgrow produced photographs of an unidentified officer;

(12)    Plaintiff requested the pictures, but Esgrow denied the request, stating that Plaintiff could only look at the pictures during the hearing;

(13)    Plaintiff was denied a pen and paper;

(14)    Esgrow received "secret" documents and information from Piecuch about which witnesses were interviewed, which refused to testify, which "went home," and which were in MHU;

The undisputed facts in this case establish that on March 5, 2010, Plaintiff was re-served the misbehavior report relating to the July 28, 2008, incident described above that took place at Clinton Correctional Facility. (Dkt. 30-1 at ¶ 5). At the time of the re-serving, Plaintiff was housed at Southport Correctional Facility. (*Id.* at ¶ 6). Prior to the Tier III re-hearing, Plaintiff selected three potential assistants to help him prepare for the hearing. (*Id.* at 7). His first choice was Piecuch. (*Id.*). Piecuch met with Plaintiff on March 5, 2010, in order to act as Plaintiff's assistant. (*Id.* at ¶ 8). During the meeting, as noted on the Assistant Form, Plaintiff requested:

(1)    All inmates and all porters on E-7 be interviewed as potential witnesses;

(2)    A list of all E-7 inmates and a list of E-7 porters;

(3)    Chapter 5 (DOCCS Directive No. 4932) and Chapter 7;

(4)    Log book entries for E-7 and watch commander log book entries;

(5)    Unusual Incident Report and Use of Force paperwork;

(6)    List of officers and nurses involved;

---

(15)    Esgrow failed to inform Plaintiff of the reasons for hearing extensions;

(16)    Esgrow refused to allow more evidentiary testimony or let Plaintiff object anymore despite Plaintiff informing Esgrow that he had submitted a FOIL request to better prepare a defense; and

(17)    When Esgrow called the author of the misbehavior report as a witness, he did not ask the officer if it was him depicted in the pictures.

(*Id.* at ¶¶ 31, 33-37, 44-45, 53-74, 79).

(7)     Rehearing procedures;

(8)     To/from memoranda; and

(9)     Photographs.

(*Id.* at ¶ 9; Dkt. 30-3 at 9).  On March 9, 2010, Piecuch returned to complete Plaintiff's assistance. (Dkt. 30-1 at ¶ 10; Dkt. 30-3 at 9).[4]

When Piecuch returned, he informed Plaintiff that he requested witnesses be asked to testify at the hearing and that Plaintiff could request a complete list of former E-7 inmates and their current locations from the hearing officer, who would determine if the request was appropriate.  (Dkt. 30-1 at ¶¶ 11-12).  Piecuch provided Plaintiff with Chapter 5 and told Plaintiff that he could request Chapter 7 from the library.  (*Id.* at ¶ 13).  Similarly, Piecuch informed Plaintiff that he could request the complete hearing officer's manual from the law library through the Freedom of Information Law ("FOIL").  (*Id.* at ¶ 19).  Piecuch requested the log book entries for the E-7 Gallery and the watch commander log book entries; however, the watch commander log book entries were unavailable.  (*Id.* at ¶ 14).  The log book entry was obtained over telephone from Clinton Correctional Facility's discipline office and provided to Plaintiff.  (*Id.* at ¶¶ 15-

---

[4]     The Court notes that Plaintiff apparently refused to sign the Assistant Form on March 9, 2010.  (Dkt. 30-3 at 9).  Moreover, while Plaintiff asserts in his deposition testimony (*see, e.g.*, Dkt. 30-5 at 62, 120) and in the hearing transcript (*see, e.g.*, Dkt. 30-4 at 91) that Piecuch never returned after the first meeting, he does not assert as much in an opposing statement of material facts—despite plentiful opportunities provided by the Court to do so.  Because Piecuch asserts in a sworn affidavit that he returned, and because the Court finds sufficient evidence in the record to support Defendants' statement in their undisputed facts that Piecuch did return on May 9, 2010, the Court deems the assertion that Piecuch returned as admitted.

16).  Plaintiff was provided the Unusual Incident Report and Use of Force Report, which were complete to the best of Piecuch's knowledge, and all the To/From memoranda that accompanied the Unusual Incident Report.  (*Id.* at ¶¶ 17, 20).  He also told Plaintiff that all of the nurses and officers involved in the incident were identified in the Unusual Incident Report.  (*Id.* at ¶ 18).  Finally, Piecuch informed Plaintiff that he could view photographs of the officers at the hearing and that the hearing officer would determine if such a request was appropriate.  (*Id.* at ¶ 21).  Piecuch noted all of the information that he provided to Plaintiff on the Assistant Form, but Plaintiff refused to sign the Assistant Form.  (*Id.* at ¶¶ 23-24; Dkt. 30-3 at 9).

While Plaintiff denies receiving some of this information from Piecuch, he admits that he received or was allowed to view these documents at some point, and that he received at least some documents from Piecuch.  (*Id.* at ¶ 22).[5]  Though Plaintiff alleges

---

[5]      Specifically, Plaintiff in his deposition denies receiving Chapter 5 from Piecuch and denies being told that he could request Chapter 7 and the Hearing Officer's Manual from the law library. (Dkt. 30-5 at 46-47).  He admits that he eventually received a log book entry, the Unusual Incident, and Use of Force paperwork, as well as the memoranda at the hearing. (*Id.* at 47).  He also admits to being allowed to view the photographs at the hearing. (*Id.*).  As to the Unusual Incident Report, Plaintiff admits he received "something" from Piecuch, but qualifies that it was incomplete. (*Id.* at 81).  He also admits to seeing documents at least similar to—sometimes without conceding that the documents were exactly alike—the Use of Force Report, and various memoranda. (*Id.* at 88-95).  Finally, as to the photographs he was shown at his deposition, he admits to having seen some, but not all, of the photographs of himself and of an officer (*id.* at 97), and having seen the E-Block log book entry from July 28, 2008 (*id.* at 96).  He also admits to having seen a New York Department of Correctional Services printout of inmate location (*id.* at 112), and the Requested Inmate Witness Refusal to Testify in Tier III Disciplinary Hearing Forms (*id.* at 112-114) (though, he states he did not receive the refusal forms at the hearing, but rather he saw them either during his Article 78 proceeding (which is chronologically impossible), or that he received them through FOIL).  He also denies having received witness interview notices at the hearing, despite

to the contrary in his complaint, the undisputed facts show that Plaintiff did not request from Piecuch a videotape of the incident, nor did he request that Piecuch ask the requested witnesses any specific questions, and never provided Piecuch with a list of questions to ask prospective witnesses. (*Id.* at ¶¶ 25-27). Additionally, there is no evidence on the Assistant Form that Plaintiff provided Piecuch with such a list. (*Id.* at ¶ 29). Further, Plaintiff never requested for Piecuch to obtain written statements from any prospective witnesses. (*Id.* at ¶ 31). Additionally, Plaintiff was provided an opportunity to question witnesses at his hearing, but chose not to do so. (*Id.* at ¶ 30).

Piecuch never told Plaintiff that witnesses could not be located or probably went home, or told Plaintiff that witnesses agreed or refused to testify because Piecuch did not know whether witnesses had agreed or refused to testify. (*Id.* at ¶¶ 32-33). Nor did Piecuch fail to provide Plaintiff with witness refusal forms because the status of Plaintiff's requests for witnesses were unknown at the time of the conclusion of the tier assistance on March 9, 2010. (*Id.* at ¶ 34). Piecuch never represented to Plaintiff that Plaintiff would not receive witness refusal forms because it would represent a threat to institutional safety or that interviewing prospective witnesses would have represented a threat to institutional safety and correctional goals, or that any interviews would be redundant. (*Id.* at ¶¶ 38-39).

---

the hearing transcript, which states "I'm going to give you two pages of [the witness interview notices]." (*Id.* at 115-117, 204, 206; Dkt. 30-4 at 99, 101). Plaintiff admits to having briefly seen the memorandum from Piecuch to Esgrow enumerating which inmates agreed and refused to testify, and which inmates had been released. (Dkt. 30-5 at 118-119, 269). However, because there is enough evidence in the record to support Defendants' undisputed version of the facts, the Court deems those facts admitted.

On the contrary, Piecuch ascertained the locations of all inmates in the E-7 Gallery and contacted the facilities that housed those inmates. (*Id.* at ¶¶ 35-36; Dkt. 30-3 at 11, 13). Some of the located inmates had been released, some refused to testify, and two inmates agreed to testify. (Dkt. 30-1 at ¶ 37; Dkt. 30-3 at 11). Ultimately, Plaintiff was provided with many of the materials that he requested, after consultation with Esgrow. (*Id.* at ¶ 41). Documents that Plaintiff did not receive during the tier assistance meetings were either unavailable or Plaintiff was not permitted to receive the documents, but could request to view them at the hearing. (*Id.* at ¶ 42). Piecuch never secretly provided the hearing officer with any documents. (*Id.* at ¶ 43).

As to the hearing itself, Esgrow was the designated hearing officer. (*Id.* at ¶ 46). The hearing occurred over multiple days between March 10, 2010, and May 3, 2010. (Dkt. 30-4 at 48, 99). Various extensions were requested and granted to allow time to receive documents and video, call witnesses, and consider the evidence and render a decision. (Dkt. 30-1 at ¶ 48). Plaintiff was allowed to call witnesses and present documentary evidence. (*Id.* at ¶ 50). He was also allowed to present objections, which were acknowledged at the hearing. (*Id.* at ¶ 51; *see generally* Dkt. 30-4 at 47-101). Plaintiff was unable to recall names or DIN numbers of any inmate witnesses he wished to testify on his behalf, so Esgrow requested and was provided a list of all inmates in E-7 Gallery at Clinton Correctional Facility at the time of the original incident, but was unable to identify inmate porters from other galleries who served as porters on E-7 at the time of the incident. (*Id.* at ¶¶ 52-53, 71). Of the 19 inmates located, nine refused to testify, five had been released already, three did not respond, and two agreed to testify.

- 10 -

(*Id.* at ¶¶ 54, 72-73).  At the hearing, Esgrow asked Plaintiff what questions he would like to ask the inmates who agreed to testify, asking whether Plaintiff wanted to "know what they saw and what they heard." (Dkt. 30-4 at 60).  Plaintiff indicated yes, but review of the transcript makes it evident that Plaintiff was expressing his wish that the witnesses be interviewed before they testified as to anything.  (*Id.* at 61-62).  Plaintiff indicated that he did not have questions for staff witnesses.  (Dkt. 30-1 at ¶ 76).  The two inmate witnesses who could be located and who agreed to participate testified at the hearing.  (*Id.* at ¶¶ 77-81).  Plaintiff declined to ask any questions of the first witness, Mr. Fox, and objected to his testimony.  (Dkt. 30-4 at 69).  Plaintiff attempted to ask the second witness, Mr. Morrison, whether he had been interviewed by anyone prior to testifying, but Esgrow disallowed this question and Plaintiff declined to ask further questions.  (*Id.* at 75).  Plaintiff objected to both witnesses.  (*Id.* at 76; Dkt. 30-1 at ¶¶ 77-82).  Plaintiff also declined to ask questions of Officer Harnden when he testified as to what happened on the date of the incident.  (Dkt. 30-4 at 83-84).  Plaintiff repeatedly refused to testify as to his version of what happened on July 28, 2008.  (Dkt. 30-1 at ¶ 84).

Esgrow allowed Plaintiff to review requested photographs during the hearing, but did not allow Plaintiff to retain the photographs.  (*Id.* at ¶ 62).  At the hearing, Plaintiff indicated that he had already received copies of the Unusual Incident Report, part of the Use of Force Report, and the log book entry for the E-7 Gallery, as he had requested.  (*Id.* at ¶ 63).  Because Plaintiff indicated that he had not received copies of the To/From memoranda, Esgrow provided Plaintiff with copies of the Unusual Incident Report, Use of Force Report, To/From memoranda, inmate injury report, memorandum concerning a

video, memorandum concerning urinalysis, memorandum concerning photos, a copy of the E-Block log entry from July 28, 2008, and a copy of a handwritten entry from log page 3 of 3. (*Id.* at ¶ 64). Plaintiff was also able to view a copy of the employee accident/injury report for Officer Harnden. (*Id.* at ¶ 65).

Plaintiff, at the hearing, requested a copy of a video that he believed captured the incident. (*Id.* at ¶ 66). Plaintiff was shown a video of his escort from medical to x-ray and of Plaintiff having x-rays taken; however, he indicated that this was not the video he wanted. (*Id.* at ¶¶ 67-68). Officer Harnden testified that there was no video of the incident itself because Clinton Correctional Facility does not have video in the location of the incident and that there was no handheld camera present during the incident. (*Id.* at ¶ 69). Regardless, Esgrow made further inquiry of Clinton Correctional Facility and determined that there was no other video available. (*Id.* at ¶ 70).

Based on the misbehavior report authored by Office Harnden, the testimony of Officer Harnden, the Unusual Incident Report, the Use of Force Report, and accompanying memoranda, Esgrow found Plaintiff guilty on all counts of assault on staff, harassment, refusing a direct order, and movement regulation violation. (*Id.* at ¶ 86; Dkt. 30-4 at 100). Based on the misbehavior report, assistance selection form, Assistant Form, and Plaintiff's statements concerning what he requested and what he received, Esgrow found that Plaintiff had received adequate opportunity for meaningful assistance. (Dkt. 30-4 at 100). At no time did anyone provide Esgrow with documents or other information in secret, nor did Esgrow re-open the hearing or modify the tape to include secret testimony. (Dkt. 30-1 at ¶¶ 87-88). Further, the hearing transcript is an accurate

representation of what occurred at Plaintiff's hearing, contrary to Plaintiff's claims. (*Id.* at ¶¶ 89-90).[6]   At the conclusion of the hearing, Plaintiff was given a copy of the disposition, a blank appeal form, and Form 2176 (Witness Interview Notice). (*Id.* at ¶ 92).[7]   Esgrow never stated that "it was not [his] job" to help Plaintiff. (*Id.* at ¶ 94).[8] The hearing concluded on May 3, 2010. (*Id.* at ¶ 91).

## PROCEDURAL BACKGROUND

Plaintiff filed the instant action on July 2, 2013, pursuant to 42 U.S.C. § 1983, alleging violations of the Due Process Clause of the Fourteenth Amendment in connection with the 2010 rehearing of a 2008 misbehavior report. (Dkt. 1).   Defendants filed a motion to dismiss and motion for summary judgment on October 25, 2013. (Dkt. 8).   On December 31, 2014, this Court dismissed the motion for summary judgment without prejudice as premature and granted the motion to dismiss in part as to Plaintiff's claims against former-Defendant Prack, the supervisory liability claim against Esgrow, and the claims of hearing officer bias and hearing timelines. (Dkt. 15).   Now that

---

[6]   At his deposition, Plaintiff could not provide any examples of substantive inaccuracies other than portions of the transcript designated "inaudible." (Dkt. 30-1 at ¶ 90).

[7]   While Plaintiff asserts that he did not receive the Form 2176 in his deposition (*see* Dkt. 30-5 at 115-117), and more vaguely in his complaint (Dkt. 1 at ¶ 76), he does not assert as much in an opposing statement of material facts—despite various opportunities provided by the Court to do so.   Because the Court finds sufficient evidence in the record to support Defendants' statement that Plaintiff did receive the form, and Defendants have set as much forth in their statement of undisputed facts, the Court takes the assertion that Plaintiff received the form as admitted.

[8]   Esgrow did state that certain tasks were not his "function."   For example, when Plaintiff asked Esgrow to clarify Officer Harnden's testimony, Esgrow informed Plaintiff that doing so was not his function. (*See, e.g.*, Dkt. 30-4 at 84).

discovery has concluded, Defendants have moved again for summary judgment. (Dkt. 30). Plaintiff was twice granted an extension of time to respond to Defendants' motion for summary judgment. (Dkt. 33; Dkt. 35). Plaintiff sent a letter to the Court, dated May 10, 2016, and received May 16, 2016, in which he advised the Court that he had prepared a response to Defendants' motion, but was not in control of the date it would be mailed. (Dkt. 36). Ten weeks later, on July 25, 2016, the undersigned's Chambers responded to Plaintiff's letter, requesting an update as to whether Plaintiff intended to pursue the case further and whether he intended to send to the Court his response. The Court received another letter from Plaintiff on August 22, 2016, dated July 29, 2016, in which he explained that he was waiting for an answer from the Facility Correspondence Department as to the mailing of his response and requested more time to inquire into the matter. (Dkt. 37). Approximately 11 weeks later, the undersigned's Chambers sent a second letter to Plaintiff on December 7, 2016, advising him that as of December 31, 2016, the Court would deem the matter fully submitted and would take the motion under advisement. The Court has received no further correspondence from Plaintiff.

## DISCUSSION

I.    **Standard of Review**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury

could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

In addition, "[i]t is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to 'raise the strongest arguments that they suggest.'" *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citation omitted). Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984).

Where there has been no response to the motion, as here, "the fact that there has been no response to a summary judgment motion does not . . . mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). "[T]he district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

## II.    Plaintiff's Due Process Claims

Plaintiff claims that Defendants violated his procedural due process rights in connection with his disciplinary rehearing in 2010.   (Dkt. 1).   Defendants argue that Plaintiff's claims against them should be dismissed because there is no genuine issue of material fact for trial.   (Dkt. 30-6).

Section 1983 requires a plaintiff to "show that the conduct in question deprived him of a right, privilege, or immunity secured by the Constitution or the laws of the United States, and that the acts were attributable at least in part to a person acting under color of state law."   *Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 609 (E.D.N.Y. 2011) (citing *Washington v. Cty. of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004)).   The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."   U.S. Const. amend. XIV, § 1. Although prisoners retain some rights under the due process clause, "those rights are somewhat muted by institutional concerns inherent in a correctional system."   *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992).

In raising a due process claim, a plaintiff must first establish that the challenged action infringed a constitutionally protected property or liberty interest.   A prison disciplinary hearing implicates a protected liberty interest if it "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandlin v. Conner*, 515 U.S. 472, 484 (1995)).   The evidence shows that Plaintiff was deprived of a liberty interest because he was sentenced to 20 months in SHU, loss of privileges, and 20 months loss of

recommended good time. (Dkt. 30-4 at 100). This penalty satisfies the protected liberty interest standard. *See Sims v. Artuz*, 230 F.3d 14, 23-24 (2d Cir. 2003) (vacating dismissal of procedural due process claims, since during little more than a four and one-half month period, the plaintiff was sentenced to SHU confinement for a total of nearly three and one-half years); *Hidalgo v. Hopin*, No. 01-CV-0057(Sr), 2009 WL 4803689, at *8 (W.D.N.Y. Dec. 9, 2009) (one year in SHU, one year loss of commissary, packages, and phone, and one year loss of good time were sufficient to demonstrate a protected liberty interest).

Second, a plaintiff must show that he was deprived of the protected liberty interest without due process. *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998). It is well-established that inmates have the right not to be deprived of a liberty interest without due process, and that inmates have due process rights in prison disciplinary hearings. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). However, "[p]rison inmates charged with disciplinary violations do not have 'the full panoply of rights' afforded to a defendant in a criminal prosecution." *Galan v. Laird*, No. 08-cv-267 (NG), 2010 WL 3780175, *1 (E.D.N.Y. Sept. 21, 2010) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). To comply with procedural due process, prison authorities must provide an inmate charged with a violation in a disciplinary hearing with: "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Id.* (quoting *Sira*, 380 F.3d at 69). The requirements of due

process are satisfied if "some evidence" supports the conclusion of the disciplinary hearing. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985).

## A.    Claims as to Inmate Assistance

Plaintiff alleges that he was not provided with adequate inmate assistance in connection with his 2010 disciplinary rehearing. (Dkt. 1 at ¶¶ 21-30, 79). Defendants argue that Plaintiff's claims must be dismissed because there is no genuine issue of material fact as to whether defendant Piecuch met with Plaintiff and made a meaningful effort to locate documents and witnesses for Plaintiff. (Dkt. 30-6).

Although inmates are not entitled to retained or appointed counsel in prison disciplinary hearings, "[p]rison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1998). New York's regulations allow for an employee assistant to help a prisoner in preparing for a disciplinary hearing. *See* 7 N.Y.C.R.R. §§ 251-4.1, 251-4.2. The Second Circuit has also "provide[d] for an inmate to receive employee assistance when that inmate is charged with an offense warranting SHU confinement." *Sloane v. Borawski*, 64 F. Supp. 3d 473, 485 (W.D.N.Y. 2014) (citing *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir 1993)). The assistant "must be assigned to the inmate to act as his surrogate—to do what the inmate would have done were he able." *Silva*, 992 F.2d at 22. "The assistant is not obliged to go beyond the specific instructions of the inmate because if he did so he would then be acting as counsel in a prison disciplinary proceeding, assistance to which a prisoner is not entitled." *Id.* The inmate assistant's role is to interview witnesses and report the results

- 18 -

of his efforts to the inmate, and to assist the inmate in obtaining documentary evidence or written statements which may be necessary. *See* 7 N.Y.C.R.R. § 251-4.2. "On one extreme, an assigned assistant who does nothing to assist an inmate 'has failed to accord the prisoner his limited constitutional due process right of assistance.'" *Gates v. Selsky*, No. 02CV496, 2005 WL 2136914, at *6 (W.D.N.Y. Sept. 2, 2005) (citing *Eng*, 858 F.2d at 898). However, "[c]ourts have found assistance to be adequate when a replacement assistant interviewed witnesses but failed to tell the inmate . . . or when the inmate alleged lack of assistance in finding documents, courts found that the documents did not exist." *Id.* at *6 (citations omitted); *see also Pacheco v. Vanwyk*, No. 94-CV-456 (RSP/GJD), 1997 WL 642540, at *2 (N.D.N.Y. Oct. 15, 1997) (finding as a matter of law that the employee assistant's help was constitutionally sufficient, because the defendant "provided available evidence that [the Plaintiff] requested and should not have been expected to check every inmate on the transfer bus. . . .").

Here, Plaintiff requested that all the inmates and all porters in the E-7 Gallery be interviewed as potential witnesses.[9] He also requested documentary evidence in the form of: (1) a list of all inmates and porters in the E-7 Gallery; (2) Chapters 5 and 7; (3) log book entries for E-7 and the watch commander log book; (4) the Unusual Incident Report

---

[9]     Defendants characterize this request as one for "all inmates who locked on E-7 Gallery and all Gallery porters [to] be called as witnesses at [Plaintiff's] hearing," and state that "Plaintiff only asked if the witnesses could be asked to testify at his hearing." (Dkt. 30-1 at ¶¶ 9, 28; Dkt. 30-6 at 12). This assertion is not supported by the record, thus the Court does not deem this statement an undisputed, admitted fact. Plaintiff's Assistant Form, completed by Piecuch, states: "[Plaintiff] requested the following named inmate(s) be *interviewed* as *potential witnesses*: All inmates on E-7 on 7/28/08 . . . All porters on E-7 on 7/28/08." (Dkt. 30-4 at 17 (emphasis added)).

and Use of Force paperwork; (5) a list of the officers and nurses involved; (6) rehearing procedures; (7) To/From memoranda; and (8) photographs. (Dkt. 30-1 at ¶ 9; Dkt. 30-3 at 9). As to the documentary evidence, the undisputed facts establish that Piecuch provided Plaintiff with Chapter 5, the log book entry for E-7, the Unusual Incident Report, the Use of Force report, a list of all the officers and nurses involved (contained within the Unusual Incident Report), and the To/From memoranda; Plaintiff was informed he could FOIL Chapter 7 and the rehearing procedures. As to these documents, the Court finds that Piecuch fulfilled his duty as inmate assistant under 7 N.Y.C.R.R. § 251-4.2 by acting as a surrogate for Plaintiff and doing for Plaintiff what he would have done for himself, were he able.

Piecuch also told Plaintiff that he could request from the hearing officer the complete list of Gallery E-7 inmates and porters, and photographs. While the Southern District of New York has stated "[w]hether it is appropriate to defer some investigative tasks to the hearing must be resolved on a case-by-case basis," *Johnson v. Greiner*, No. 03 Civ. 5276(DLC), 2007 WL 2844905, at *15 (S.D.N.Y. Sept. 28, 2007), New York appellate courts have held that assistant error under 7 N.Y.C.R.R. § 251-4.2 can be "obviated by the Hearing Officer . . . ." *Reynoso v. LeFevre*, 199 A.D.2d 886, 887 (3d Dep't 1993) (citing *Reveron v. Coughlin*, 142 A.D.2d 860, 861 (3d Dep't 1988) ("[P]etitioner made no complaint [with regard to his inmate assistance] at the hearing, when any deficiency could have been corrected.")); *see, e.g., Sanchez v. Hoke*, 116 A.D.2d 871, 872-73 (3d Dep't 1986) ("[P]etitioner's lament that employee assistance was not accorded rings hollow. After a colloquy with the hearing officer relating to employee

- 20 -

assistance, petitioner received the assistance for which he asked—an interpreter."). These cases stand for the proposition that relief occurring at the hearing can cure inmate assistant error. Because the list of inmates and photographs were provided to Plaintiff at the hearing, (*see* Dkt. 30-4 at 60, 63-64), Plaintiff's claim as to these documents are without merit. Plaintiff was also provided with the Witness Interview Notice (Form 2176) at the conclusion of his hearing, which indicated that Esgrow could not identify any porters, despite requesting such information from Clinton Correctional Facility. (Dkt. 30-1 ¶ 92; Dkt. 30-4 at 42-43, 99-101). Accordingly, any claim regarding the list of porters is also without merit.

Additionally, Plaintiff alleges that Piecuch did not finish filling out the inmate Assistant Form. (Dkt. 1 at ¶ 29). The undisputed facts flatly contradict this assertion. (*See* Dkt. 30-4 at 17 (showing the completed Assistant Form)). Thus, this allegation lacks merit.

The remaining allegation against Piecuch, then, is that he never reported the results of witness interviews, whether interviews ever occurred, or produced witness refusal forms. (Dkt. 1 at ¶¶ 26-28). The Court finds that Piecuch's failure to report the results of witness interviews, if any, did not violate Plaintiff's constitutional rights. First, Plaintiff's assistant did "far more than nothing" and gathered "substantially all" of the documentary evidence Plaintiff requested—to the extent that Plaintiff himself would have been able to gather such evidence. *See Shepherd v. Fisher*, No. 08-CV-9297(RA), 2017 WL 666213, at *37 (S.D.N.Y. Feb. 16, 2017) (finding that a plaintiff was "not denied his

limited right of assistance" where his assistant gathered substantially all of the evidence requested by Plaintiff).

Additionally, even if Plaintiff's assistant did violate Plaintiff's rights by not interviewing and/or not reporting the results of witness interviews to Plaintiff, the Second Circuit endorses harmless error review.[10]  The undisputed facts show that, of all the inmates locking in the E-7 Gallery on the date of the incident, all were contacted (or contact was attempted) and only two agreed to testify. (Dkt. 30-1 at ¶ 54; Dkt. 30-3 at 11, 13). Those two inmates testified at the hearing. (Dkt. 30-1 at ¶¶ 77, 80; Dkt. 30-4 at 67-69, 73-76). Based on the hearing transcript, Plaintiff's main concern regarding interviewing witnesses seemed to be that he could not predict the substance of the witnesses' testimony without interviews. (*See, e.g.*, Dkt. 30-4 at 61 ("I gave my

---

[10]    In *Powell v. Coughlin*, 953 F.2d 744 (2d Cir. 1991), the Second Circuit stated, "[i]n the absence of a recent pattern of [due process] violations, it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial." *Id.* at 750; *see also Samuels v. Selsky*, 166 F. App'x 552, 556 (2d Cir. 2006) ("[The district court] granted . . . summary judgment, finding that any performance inadequacies were necessarily harmless. We agree." (citations omitted)). Several district courts within the circuit have cited to *Powell* in performing a harmless error review of facts similar to the instant case. *See Pilgrim v. Luther*, No. 01 Civ. 8995RCCKNF, 2007 WL 233203, at *5 (S.D.N.Y. Jan. 24, 2007) (finding alleged failure of the plaintiff's inmate assistant to perform his duties amounted to harmless error), *aff'd* 571 F.3d 201; *Louis v. Ricks*, No. 01 CIV. 9368(DAB)AJP, 2002 WL 31051633, at *11, 15 (S.D.N.Y. Sept. 13, 2002) (finding that any failure of the plaintiff's inmate assistant to interview a witness was, at most, harmless error because the witness testified in the plaintiff's favor).    However, the Second Circuit "has reversed grants of summary judgment on failure-to-assist claims without conducting a harmless error analysis, at least where the assistant provided no assistance at all." *Johnson v. Greiner*, No. 03 Civ. 5276(DLC), 2007 WL 2844905, at *15 n.18 (S.D.N.Y. Sept. 28, 2007) (citing *Ayres v. Ryan*, 152 F.3d 77 (2d Cir. 1998)).    Because, as discussed above, Piecuch did provide assistance, harmless error analysis is appropriate.

assistance a list of questions to ask them because I don't know what they seen yet so therefore I can't call them as a witness."), 62 ("They might be witnesses . . . that don't like me say he seen something that he didn't seen.")).   However, both inmate witnesses testified in Plaintiff's favor at the hearing, stating that Plaintiff did not assault Officer Harnden.  (*Id.* at 68 ("The officer rammed [Plaintiff] with the cart."), 75 ("The first thing I seen was him with his property and the CO said something to him and he kept on walking and he kept on walking and the CO's beat him up.")).   Thus, any potential error on Piecuch's part in failing to interview witnesses was harmless.  *See Louis v. Ricks*, No. 01 Civ. 9368(DAB)AJP, 2002 WL 31051633, at *11, 15 (S.D.N.Y. Sept. 13, 2002) (finding that any failure of the plaintiff's inmate assistant to interview a witness was, at most, harmless error because the witness testified in the plaintiff's favor).

Accordingly, Defendants' motion as to the claims against Defendant Piecuch is granted.

B.    **Claims as to Disciplinary Hearing**

Plaintiff also claims that his due process rights were violated during his disciplinary hearing in that he was not permitted to present witnesses, documents, or other evidence at the hearing and that the hearing was recommenced outside of his presence (Dkt. 1 at ¶¶ 31-77, 79).   Defendants argue that Plaintiff's claims should be dismissed because Esgrow provided Plaintiff with requested materials, gave Plaintiff the opportunity to present evidence and examine witnesses, and ensured that Plaintiff's due process rights were protected.  (Dkt. 30-6).

### 1.     Denial of Evidence

"The inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. However, "prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal and undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.*; *see also Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991) (a hearing officer does not violate due process by excluding irrelevant or unnecessary testimony or evidence); *Phelan v. Superintendent of the Great Meadow Corr. Facility*, No. 11-cv-06127, 2012 U.S. Dist. LEXIS 49776, at *18 (W.D.N.Y. Apr. 9, 2012) ("The Supreme Court has stated that disciplinary hearing officers must have the discretion to deny witnesses, noting that valid bases for the denial of witnesses would include irrelevance, lack of necessity, and other hazards particular to each case."). In exercising his discretion to exclude evidence from a disciplinary hearing, a prison official:

> may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify, but [ ] they may do so either by making the explanation a part of the "administrative record" in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a "liberty" interest is challenged because of that claimed defect in the hearing. In other words, the prison officials may choose to explain their decision at the hearing, or they may choose to explain it "later."

*Ponte v. Real*, 471 U.S. 491, 497 (1985).

Here, Esgrow did not violate Plaintiff's constitutional rights during the hearing. Plaintiff's first contention—that it was never determined which witnesses were interviewed and which refused to testify for Plaintiff—is flatly contradicted by the undisputed facts.  Esgrow told Plaintiff that he had obtained a list of inmates who were located on Plaintiff's block at the time of the incident and shared which specific inmates Esgrow was unable to locate, which had refused to testify, which had not answered yet, and which had agreed.  (Dkt. 30-1 at ¶ 72-73; Dkt. 30-4 at 60).  Plaintiff was also shown the memo from Piecuch to Esgrow outlining this information.  (Dkt. 30-4 at 90).  Further, while it does not appear that Esgrow explained his reasoning then or now for not entering the witness refusal forms into evidence, as he must when denying a request, *see Kingsley*, 937 F.2d at 30 ("[T]he prisoner's right to . . . present evidence in disciplinary hearings could be denied if granting the request would be 'unduly hazardous to institutional safety or correctional goals.'"), the hearing transcript shows that Plaintiff never requested to view or enter such forms into evidence.  (*See generally* Dkt. 30-4 at 47-101).  Even construing Plaintiff's assertion that he never saw refusal forms (Dkt. 30-4 at 91) as a request for the same, any error on Esgrow's part in failing to introduce inmate refusal forms into the record would in any event have been harmless because a review of the record shows that Esgrow accurately represented that only inmates Fox and Morrison had agreed to testify.  (*See* Dkt. 30-4 at 23-31).  Accordingly, these arguments are meritless. Similarly, Plaintiff never explicitly requested that Esgrow make a part of the record the efforts made to secure the testimony of the inmates who could not be located.  (*Id.* at 47-101).  He did request that the hearing be postponed until his appeal of a denial of a FOIL

request for the whereabouts of certain inmates processed (*id.* at 86); however, any potential error on this front was harmless for the same reasons as outlined above. Plaintiff specifically alleges that Esgrow refused to allow more evidentiary evidence or allow Plaintiff to object more in spite of being informed of Plaintiff's FOIL appeal. The Court finds, in light of the hearing transcript—which reflects that Plaintiff was allowed to place at least ten objections on the record after Plaintiff first informed Esgrow of Plaintiff's FOIL appeal (*see id.* at 86-101)—that Esgrow was within his discretion to "keep the hearing within reasonable limits." *Wolff*, 418 U.S. at 566.

Further, Esgrow never stated that it was "not [his] job" to help Plaintiff; rather, he stated that it was "not [his] function" to clarify testimony, to interview officers, or to provide Plaintiff with advice as to how to present a defense. (Dkt. 30-4 at 84, 95, 97). Esgrow was correct on all fronts. *See, e.g., Russell v. Selsky*, 35 F.3d 55, 61 (2d Cir. 1994) (quoting the defendants' statement of facts in response to and against an allegation of hearing officer bias: "In assigning hearing officers, the Tier III Office is required to make sure that the hearing officer did not witness the incident or have any direct involvement in it, investigate the incident, or act as the Review Officer"). As to Plaintiff's contention that Esgrow refused to allow testimony to show that Plaintiff's rights were violated before the hearing began and that his rights were violated during the hearing, Esgrow allowed Plaintiff to state his numerous objections on the record. (*See generally* Dkt. 30-4 at 47-101). Plaintiff also complains that Esgrow disallowed Plaintiff's question to inmate-witness Morrison about whether Morrison had been interviewed before the hearing—which goes to whether Piecuch fulfilled his duties as an

inmate assistant.   Having already determined that Piecuch fulfilled his constitutional duty, this allegation is moot.

Plaintiff also claims that Esgrow used the testimony of Officer Harnden to deny Plaintiff video documentary evidence—because Harnden testified that there was no video of the incident itself—and exonerating verbal testimony—because Harnden testified that there were no others present at the time of the incident.   (*See* Dkt. 30-4 at 83).   However, even after Harnden's testimony, Esgrow clearly continued to make an effort to find any video to which Plaintiff might be referring, though that effort was ultimately unfruitful. (Dkt. 30-1 at ¶ 70; Dkt. 30-4 at 42 ("I requested Clinton CF to present all video which might pertain to this incident.   They provided a video showing you being X-Rayed and moved to a cell after . . . x-ray however . . . irrelevant.   You waived that video.   I made further inquiry.   Clinton CF indicated no other video was available, Co Harnden in his testimony indicated no recordings were made of the incident and I was unable to locate any additional video."),[11] 99 (stating at the conclusion of the hearing that he made further inquiry and "there was no other video available")).   Additionally, Esgrow did not deny Plaintiff exonerating verbal testimony on the basis of Harnden's testimony.   Rather, Plaintiff himself could not identify any potential witnesses by name or DIN number (Dkt. 30-4 at 94), and received favorable (albeit contradictory) evidence from the two witnesses that the inmate assistant and hearing officer could locate.   As to potential

---

[11]   The Court deciphered this exhibit as best as it could.   The ellipses represent what the Court could not make out.   Defendants' counsel is advised in the future to supplement borderline-illegible evidence with a typed representation of the content to preserve Court time and resources.

testimony from any of the other inmates identified on Plaintiff's block who either did not respond or had been released, Esgrow wrote in a Witness Interview Notice—provided to Plaintiff at the conclusion of the hearing—that his request for additional inmate testimony was denied because Plaintiff was "unable to indicate what information other inmates would present" and because Plaintiff "refused to state what [he] believed happened." (Dkt. 30-4 at 43, 99). Thus, Esgrow explained his reasoning in accordance with the *Ponte* standard, enumerated above, and such reasoning was sufficient. *See, e.g., Scott v. Kelly*, 962 F.2d 145, 147 (2d Cir. 1992) ("[The plaintiff] did not advise [the hearing officer] what the testimony of the witnesses would be. Thus, [the hearing officer] had no reason to believe that the testimony would be relevant or that it would affect his decision.  In prison disciplinary proceedings, unlike court trials, officials may draw an adverse inference from an inmate's failure to testify.  In this case, [the plaintiff's] refusal to testify created such a strong adverse presumption as to render further testimony irrelevant." (citations omitted)).

Plaintiff goes on to assert that Esgrow's refusal to reinstate an inmate assistant during the hearing was a violation of his due process rights.  An examination of the hearing transcript shows that Plaintiff was not handicapped by not having an assistant during the hearing.  His primary reason for requesting assistance was in relation to interviewing witnesses, (*see, e.g.*, Dkt. 30-4 at 59,[12] 62,[13] 85[14]), though he also requested

---

[12]   The hearing transcript states:

Brooks: That's not what I'm saying. What I'm saying is my witnesses, inmates witnesses and other witnesses that's not correction officers are

that his assistant review the videotape that was determined not to exist. (*Id.* at 62). As determined above, Plaintiff's inmate assistant's failure to interview Plaintiff's unnamed witnesses was not in error, and even if it was, it was not prejudicial. *See Talibon v. Sullivan*, No. 88 CIV 0865 (LBS), 1990 WL 102220, at *5 (S.D.N.Y. July 12, 1990) (granting summary judgment for the defendant where the defendant denied the plaintiff assistance during a disciplinary hearing where it did "not appear that [the] plaintiff was in any way handicapped by not having [an assistant]"). This argument is a nonstarter.

Plaintiff's next assertion is that Esgrow did not inquire as to what happened to the alleged videotape of the incident. As outlined above, Esgrow made every effort to obtain the video that Plaintiff alleged existed. Officer Harnden's testimony was consistent with

---

extremely (inaudible) to my defense because the only thing the officers want to do lie (inaudible) if not my witnesses and outside testimony is extremely crucial to my defense. That's what I'm telling you. Now how you going to (inaudible) other peoples [sic] testimony (inaudible).

Esgrow: Alright. Let's see if we can't find some witnesses. I'm going to, you don't want to tell me what happened here?

Brooks: No not at this time. Also when you find a witness—I'd like my assistance to be reinstated.

Esgrow: I'll consider that. Ok. Take him back.

(Dkt. 30-4 at 59).

[13]   "That's why I need my assistance to question him so I know who's going to testify for what. They might be witnesses (inaudible) that don't like me say he seen something that he didn't seen." (Dkt. 30-4 at 62).

[14]   "My assistance could have interviewed my witnesses on E-7 and E-8." (Dkt. 30-4 at 85).

the nonexistence of the video.[15]  The Court finds that the issue relevant to the hearing was whether any such tape existed that could be used as evidence, not what may or may not have happened to a video that may or may not have ever existed.  As discussed, Esgrow made a constitutionally sufficient inquiry into the existence and whereabouts of any such video.

Plaintiff further asserts that he requested photographs of Officer Harnden and Esgrow produced photographs of an unidentified officer.  There is no evidence in the record that Plaintiff requested photographs of Officer Harnden, or anything other than general photographs of officers for that matter.  The photo shown to Plaintiff may have been of another officer involved in the incident.  Accordingly, this allegation is without merit.  Plaintiff similarly claims that Esgrow's decision to allow Plaintiff only to view the photographic evidence, but not retain it, deprived him of a fair hearing.  A fair hearing requires only advance, written notice of the charges, a reasonable opportunity to call witnesses and present documentary evidence, a fair and impartial hearing officer, and a written statement of the disposition, including the evidence relied on and the reasons for actions taken.  *See Sira*, 380 F.3d at 69.  Though the Court has not found case law specifically stating that allowing a prisoner only to *view* documentary evidence at his hearing does not violate a constitutional right, the Court is confident that this action on

---

[15]     In the Witness Interview Notice, Esgrow wrote: "I made further inquiry.  Clinton CF indicated no other video was available, CO Harnden in his testimony indicated no recordings were made of the incident and I was unable to locate any additional video." (Dkt. 30-4 at 42).  Officer Harnden testified: "There is not video of the incident in the block.  We do not have video in our blocks." (*Id.* at 83).  He also testified that there was no handheld camera present during the incident. (*Id.*).

Esgrow's part did not infringe on any of the requirements of a fair hearing listed above. In the same vein, Esgrow's denying Plaintiff's request for a pen and paper did not infringe on any of the basic necessities for a fair hearing.

As to the allegation that Esgrow received secret documents and information from Piecuch, Plaintiff is referring to the memo from Piecuch to Esgrow outlining the results of Piecuch's efforts to obtain witnesses for Plaintiff. (Dkt. 30-5 at 269). Plaintiff appears to have been confused during the hearing as to how Esgrow knew which inmates had agreed or refused to testify, or could not be found. (*See* Dkt. 30-4 at 87-90). When Esgrow informed Plaintiff that he knew because of this memo, he allowed Plaintiff to view the memo toward the end of the hearing, despite having already shared the information contained within the memo with Plaintiff orally at the beginning of the hearing. (*Id.* at 60, 90). Plaintiff's misconception does not amount to secret information shared between Piecuch and Esgrow.

Next, Plaintiff complains that Esgrow failed to inform him of the reasons that the extensions of the hearing were obtained. The Court previously found that, even based on Plaintiff's allegations alone, the extensions were for legitimate reasons. (*See* Dkt. 15 at 33). However, 7 N.Y.C.R.R. § 251-5.1(b) provides: "Where a delay is authorized, the record of the hearing should reflect the reasons for any delay or adjournment, and an inmate should ordinarily be made aware of these reasons unless to do so would jeopardize institutional safety or correctional goals." Even if Plaintiff's allegations are true, the above-quoted regulation does not create a protected liberty interest. *See Green v. Bauvi*, 824 F. Supp. 1134, 1144-45 (S.D.N.Y. 1992) ("Even assuming these allegations

to be true, [the defendant] is still entitled to summary judgment on the remaining claims against him because [7 N.Y.C.R.R. § 251-5.1(b)] does not create a protected liberty interest.").

Finally, Plaintiff's contention that Esgrow did not ask Officer Harnden, while he was testifying, if it was him depicted in the pictures, cannot stand. Esgrow asked Plaintiff whether he had any questions he would like Esgrow to ask Harnden. Plaintiff replied "no." (Dkt. 30-4 at 83). Esgrow again inquired of Plaintiff, "any[] further questions?" to which Plaintiff responded "no." (*Id.* at 84). Because Plaintiff was given the opportunity to ask his desired question and forewent that opportunity, Esgrow's failure to ask the question of his own volition cannot be a violation.

Accordingly,  Defendants' motion as to the claims against Esgrow relating to the denial of receiving or presenting evidence at the hearing is granted.

### 2.    Recommencing the Hearing Outside of Plaintiff's Presence

Plaintiff claims that Esgrow recommenced the disciplinary hearing outside of Plaintiff's presence and stated on the record that he provided Plaintiff with certain materials, which Plaintiff claims he never received. (Dkt. 1 at ¶¶ 76-77).

"District courts in this circuit have expressed differing views as to whether an inmate has a due process right to be present at a disciplinary proceeding separate and apart from the well-established rights of inmates to call witnesses and present documentary evidence." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 513 (S.D.N.Y. 2012). In *Young v. Hoffman*, 970 F.2d 1154 (2d Cir. 1992), the Second Circuit stated that "the Due Process Clause provides inmates with several protective procedures that they may

expect at disciplinary proceedings, including the opportunity to appear at the hearing and to call witnesses." *Id.* at 1156; *see also Chavis v. Zodlow*, 128 F. App'x 800, 805 (2d Cir. 2005) (characterizing the Supreme Court's decision in *Wolff* as acknowledging an inmate's limited right to be present during his disciplinary proceeding). Furthermore, in *Webb v. Selksy*, No. 01-CV-149S, 2008 WL 796179 (W.D.N.Y. Mar. 24, 2008), the court noted that "the Second Circuit [has] referred to the opportunity [for an inmate] to appear at the hearing and to call witnesses." *Id.* at *8. "Thus, it would appear that Plaintiff may have had at least a limited right to appear at his hearing." *Id.*; *but see Bogle v. Murphy*, No. 98-CV-6473 CJS, 3002 WL 22384792, at *5 (W.D.N.Y. Sept. 9, 2003) (holding that an inmate does not have a due process right to be physically present at his disciplinary hearing).

Here, Plaintiff alleges that the hearing officer "recomeneced [sic] the hearing after he ended it out of the plaintiff['s] presen[c]e and stated for the record that he gave the plaintiff some documents which he did not," characterizing this alleged occurrence as "secret testimony." (Dkt. 1 at ¶¶ 76-77). The undisputed facts establish that no one secretly provided Esgrow with documents or other information, nor was the hearing re-opened to receive evidence outside of Plaintiff's presence or the tapes of the hearing modified. (Dkt. 30-1 at ¶¶ 87-88). The evidence also shows that Plaintiff was present for and did receive the disposition, blank appeal form, and Forms 2176 (Witness Interview Forms) at the conclusion of the hearing.[16]   (*See* Dkt. 30-1 at ¶ 92; Dkt. 30-4 at 99-101).

---

[16]   These are presumably the documents Plaintiff refers to in his complaint: "[The hearing officer] recomeneced [sic] the hearing after he needed it out of the plaintiff['s]

If Plaintiff is referring to the portion of the hearing transcript stating: "This is Commissioner's Hearing Officer James Esgrow. Today's date is 5/3/10. I note that prior to Mr. Brooks leaving the room he was given a copy of the disposition. So he has disposition, blank appeal form and (inaudible) 2176," this portion is largely insignificant as it is neither testimony nor evidence; rather, it is only a clarification of what is already clear elsewhere in the transcript and which was announced in Plaintiff's presence.[17] Given the portion's insignificance, the Court finds that Plaintiff's limited right to appear at his hearing was not violated by this four-sentence clarification.

Accordingly, Defendants' motion for summary judgment as to reopening the hearing outside of Plaintiff's presence is granted.

---

presen[s]e and stated for the record that he gave the plaintiff some documents which he did not." (Dkt. 1 at 76).

[17]   The hearing transcript states:

Esgrow: Thank you. Mr. Brooks . . . . I'm going to give you two pages of form 2176. [Reads the disposition]. Here is your blank appeal form. . . .

Brooks: (Inaudible)

Esgrow: Wait. Stop please. The time is 1:03 pm. This hearing has concluded.

Esgrow: This is Commissioner's Hearing Officer James Esgrow. Today's date is 5/3/10. I note that prior to Mr. Brooks leaving the room he was given a copy of the disposition. So he has disposition, blank appeal form and (inaudible) 2176.

(Dkt. 30-4 at 99-101).

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (Dkt. 30) is granted.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: March 27, 2017
       Rochester, New York